No. 25,995.

Eliza R. Bolinger, *Appellant,* v. B. E. Giles and W. W. Barrett et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. Fraud—*Pleading—Sufficiency of Allegations.* A petition filed in an action to recover money and property alleged to have been obtained by defendants from plaintiff by fraudulent representations, examined, and held to state a cause of action.

2. Same—*Evidence—Sufficiency.* The evidence produced by plaintiff in support of the charges of fraud is held to be sufficient to require the submission of the same to the jury.

Appeal from Reno district court; William G. Fairchild, judge. Opinion filed June 6, 1925. Reversed.

*F. L. Martin, John M. Martin,* and *James N. Farley,* all of Hutchinson, for the appellant.

*C. M. Williams,* and *D. C. Martindell,* both of Hutchinson, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by Eliza R. Bolinger to recover $2,000 from B. E. Giles, W. W. Barrett, A. N. Glancy and F. Corp, which was alleged to have been obtained from her by fraudulent representations and without consideration. She also asked for the cancellation of a certain contract interest in real estate which she was fraudulently induced to assign and transfer to them as part payment of the $2,000. A demurrer to her evidence was sustained, and from that ruling she appeals.

In her petition she alleged that the defendants represented to her husband that they owned the Las Crusadas mine in Mexico, which cost them $80,000, and had turned in, in payment of it, $40,000 worth of property; that it was the richest mine in Mexico, richer than the Lucky Tiger; that the tunnels were all in order; that they had a smelter by the side of the mine, and that they would begin shipping the bullion and returns would be received in thirty days; that more money was needed to operate the mine; and that her husband, W. Bolinger, relied upon the representations made and purchased stock in the pretended corporation, and paid for it the sum of $7,400. She alleged that her husband informed her of the representations made by Giles, to the effect that he had paid the sums of money recited and had received certificates of shares in the said company; that defendant Corp had subscribed for seventeen shares and would pay $17,000 cash for the same; that the mine would be conveyed to the company, and that the defendant, Glancy, had been made the financial agent and escrow trustee, and the financial affairs of the company would be handled by him; and that, relying upon the representations and statements made, she purchased two shares of stock of the alleged value of $2,000, payment being made by the transfer of the contract for real estate, which was of the value of $1,195, and the remainder was paid by check and note to the defendants. After reciting the representations made to her husband, she further alleged that Glancy, the agent of the defendants, repeated to her the representations made to her husband, and in purchasing the stock she relied upon the representations so made and was induced by them to invest the $2,000 in trustee's certificates in a common-law trust, alleged to have been recorded in Reno county. It is alleged that in fact the mine was not owned by the defendants; that they did not invest the sums men-

tioned in it; that the corporation which the defendants pretended they were organizing was in fact never organized, nor incorporated according to law; that Corp did not subscribe and pay for $17,000 worth of the capital stock, and that the only money paid into the corporation was paid by the plaintiff and her husband and was fraudulently converted by the defendants to their own use; that books for the subscription of stock were never opened by the defendants; that a charter for a corporation which they had obtained from the state was annulled by them; that no declaration of trust was ever recorded in Reno county, nor signed and executed by any of the parties named therein, and that the certificate of shares sold to her was of no value whatever, and she tendered the same to the defendants; that the assignment of real estate which she transferred to them was given without any consideration; and by means of the false pretenses stated. She therefore asked for the recovery of $2,000 and interest thereon, and that the assignment of the contract covering the title to real estate be canceled and set aside.

The defendants answered with denials, and further that the defendant Glancy was never authorized by the other defendants to make any representations to plaintiff concerning the mining property. On the trial before a jury, it was shown that Glancy acted as the financial agent of the company, for which he was to have five per cent on sales of stock. He admitted that application had been made for a permit to sell stock, but that he had never received it, and had never seen the charter of the company which had been organized. He states that he went to old Mexico with the defendant Barrett, and he admitted the sale of the certificates to the Bolingers. He said that he had the Bolinger money and written contract in his hands only about thirty minutes, when he turned them over to Mr. Barrett. He admitted a conversation with Mrs. Bolinger about his visit to the mine, its distance from the railroad; said he told her that the only transportation was by way of pack mules; did not remember that he ever told her that there was a smelter there, and did not tell Mrs. Bolinger who claimed to own it. He testified that he did not make any false or fraudulent representations, but just told her what he saw. Mrs. Bolinger testified that Glancy came to her house three or four times about the matter; represented that Glancy and Barrett owned the mine; they were good men; represented that Mr. Corp was to take $17,000 worth of stock, and that one of the Rowlands was to take stock,

and that he, Glancy, was to be the escrow holder. The money was to be used to buy machinery and run the mine; that it was nearly ready for operation and would be in operation inside of thirty days. She testified that she believed the representations made by Glancy, and, relying on them, purchased the shares. Glancy further told her that it was a good investment and that her husband had taken stock in the scheme. There was testimony that a writing purporting to be a declaration of trust had been made, but the nature of it was not shown. It does not appear to have been filed in Reno county as represented. A charter was applied for and a certificate issued, but this was subsequently abandoned. Corp testified that he never subscribed for any stock in the trust, but did agree to take $1,000 when $29,000 had been paid to the escrow holder. Giles subscribed for $2,000 worth of stock, and turned in as payment some property which he stated he owned in Mexico. Barrett stated that a common-law trust was organized, which was signed by himself, Giles and Corp, but it was abandoned and a corporation formed in January, 1923.

The contention of the defendants in support of the ruling of the court is that the representations alleged to be fraudulent which induced the plaintiff to buy the mining stock were made to her husband, and she did not allege that they were made to him for the purpose of deceiving her. It is contended that an examination of the testimony will show that there was no proof of any false or fraudulent representations upon which the court could base a judgment.

The question seems to have been determined upon the ground that the representations were made to her husband and not to her. Enough testimony was introduced to take the case to the jury as to fraudulent representations, and the question is, Was there pleading and proof that representations were made to her as well as to her husband, and did she rely on them? Whether or not the false representations made to the husband of plaintiff, and communicated by him to her, can be made the basis of a recovery by her for the fraud, need not be determined. After reciting the representations made to her husband she pleaded specifically that the fraudulent representations were made to her by the defendants through their agent, Glancy, and that she relied on these when she parted with her money. A reading of the averments and the evidence tending to sustain them, a part of which has been stated, shows clearly

that a case was made for submission to a jury. Assuming, without deciding, that the fraudulent representations made through her husband are insufficient, the remaining averments of representations made directly to the plaintiff did state a cause of action against the defendants.

It requires no argument to show that the evidence tended to prove that plaintiff's money and property were obtained from her by the fraud of the defendants. The facts pleaded, which the evidence tended to prove, are self-evident, and error was committed in sustaining a demurrer to plaintiff's evidence. The judgment will be reversed and the cause remanded for a new trial.